```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
UNITED STATES OF AMERICA,              :
                                       :
             -against-                 :
                                       :
RAYMOND ORWIN PTOLEMY HARRY,           :
                   Defendant.          :
-------------------------------------------------------x
```

**ORDER DENYING BAIL REQUEST**

**Docket No. 19-cr-535**

**Dora L. Irizarry, United States District Judge:**

Defendant was charged by a two-count indictment filed on November 13, 2019 with importation of over 500 grams of cocaine and possession with intent to distribute more than 500 grams of cocaine in violation of 21 U.S.C. §§ 952(a), 960(a)(1) and 960(b)(2)(B)(ii) and 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(ii)(II), respectively, based on his arrest on October 27, 2019 at John F. Kennedy International Airport for his possession of approximately 1.196 kg. of cocaine contained in his luggage. Defendant, who has no legal status in the United States, has been in custody since the date of his arrest. On January 12, 2020, defendant pled guilty to both counts in the indictment without entering into a plea agreement with the government. The Presentence Report ("PSR") was disclosed timely on March 20, 2020 and sentencing currently is scheduled for June 3, 2020.

By Order issued March 31, 2020, the Court denied defendant's request, made through his counsel, to advance his sentence hearing ("the March 31 Order"). *See,* Dkt. Entry No. 15. Defendant essentially cited the current coronavirus/COVID-19 pandemic ("COVID-19"), the purported "special dangers posed to inmates by the current public health crisis and what [counsel] believe[s] is a strong case for a time served sentence. . ." Def. 03/26/20 Ltr., Dkt. Entry No. 13. In denying the request, this Court held that, "[u]nder the circumstances of this case, this Court does not find that sentencing 'cannot be further delayed without serious harm to the interests of justice.'

March 31 Order, p. 2.  The Court found further that there is no correlation between defendant's eye condition and any increased risk in contracting COVID-19 that would justify advancing the sentence date and conducting proceedings via video or audio conferencing nor does defendant have any of the conditions that would put him in the category of those most vulnerable to contracting COVID-19.  *Id.*  The Court further noted that defense counsel's application was based on rather presumptuous assumptions that this Court would concur with his sentence recommendation of time served (at the time, approximately five months, a substantial downward variance from the projected guidelines range of 24 to 30 months), and his analysis about the effect of the mandatory minimum pursuant to U.S.S.G. § 5C1.2(b) on the overall sentence guideline range, despite the application of the safety valve, and other arguments contained in his sentencing memorandum.

Before the Court is defendant's bail application, seeking release pending sentencing citing an exception under the Bail Reform Act for extraordinary circumstances pursuant to 18 U.S.C. § 3145(c).  Def. Bail App., Dkt. Entry No. 19.  The government opposes the request.  Govt. Opp., Dkt. Entry No. 20.  Defendant replied.  Def. Reply, Dkt. Entry No. 21.  For the reasons set forth below, defendant's request is denied in its entirety.

Defendant essentially raises the same arguments that he made in his request to advance sentencing and in his sentencing memorandum that the Court rejected in the March 31 Order. Defendant also claims that he is not a danger to the community and that he is not a risk of flight. He adds that his currently unemployed niece has agreed to serve as a suretor and allow defendant to live with her and her two young sons.  Defendant further asserts that his disabled sister, who lives off disability benefits in Brooklyn, also agrees to serve as a suretor.  Both prospective suretors potentially only can provide "moral suasion" as neither has any property or assets to secure a bond.

The government opposes defendant's application correctly noting as an initial matter that, because defendant pled guilty to two Class B drug offenses, each with statutory mandatory minimum sentences of five (5) years and maximum sentences of (40) years, detention pending sentencing presumptively is mandatory. *See,* 18 U.S.C. § 3143(a).  As the government further correctly notes, defendant cannot satisfy the exception criteria for release pending sentencing set forth in 18 U.S.C. § 3143(a)(2), a fact defendant cannot and does not dispute. *See also, U.S. v. Lea* 360 F.3d 401, 403(2d Cir. 2004).  Nevertheless, as the government acknowledges, a defendant who cannot meet the foregoing criteria may be released if "clear and convincing evidence" establishes that he is not a flight risk or a danger to the community, *and* it is "clearly shown" that there are "exceptional reasons" the defendant's continued detention would be inappropriate. *See,* Govt. Opp., p. 2; *Lea*, 360 F.3d at 403 (citing 18 U.S.C. §§ 3143(a)(1), 3145(c)(emphasis added)). The government maintains that defendant cannot meet this standard.  The Court agrees.

Contrary to defendant's assertion, the Court finds, as contended by the government, that defendant poses a substantial flight risk.  Defendant awaits sentencing on two (2) Class B felonies with a statutory range of 5 to 40 years.  Despite having satisfied the safety valve, due to the statutory minima and by operation of Sentencing Guideline ("SG") § 5C1.2(b), defendant's sentence guidelines range ("SGR") is 24 to 30 months, higher than the applicable range of 18-24 months without the statutory minima.  Moreover, contrary to his claim, defendant has not served a substantial part of his sentence, assuming a sentence at the low end of the guidelines is imposed. He barely has served six (6) months and defendant should not assume, as he apparently does, that the Court will impose a sentence of time served as he recommends.  His lack of criminal history and minimal role has been accounted for in the guidelines as calculated.  Nor is defendant's age of 52 a mitigating factor as he committed the instant offense at the age of 51.  Defendant is responsible

for the importation of a significant amount of cocaine, approximately 1.2 net kilograms, which he claims he did to pay off a debt, which he apparently easily should have been able to pay off based on his legitimate wages, whether based on the amount of monthly earnings he disclosed to Pretrial Services at the time of his arrest or to the Probation Department in connection with the preparation of the Presentence Report, an amount significantly higher than that reported to Pretrial Services.

Defendant has no legal status in this country, has indicated a desire to return to his native Guyana, and has an Immigration and Customs Enforcement ("ICE") detainer lodged against him. While contending, on information and belief (although not setting forth the basis thereof), that ICE is not enforcing detainers on defendants in custody pending disposition of their cases, defendant concedes that, if released, he could be arrested by ICE and deported. Despite surrendering his passport, defendant easily could return to his country simply by consenting to deportation. Defendant's proposed suretors have no assets to post and only could provide "moral suasion" per defendant. Of note, despite claiming to be close to his sister and niece, at the time of his arrest, defendant could not provide their contact information to the Pretrial Services Officer who interviewed him.[1] The Court finds this insufficient to assure defendant's presence.

Defendant further asserts that the current conditions in the Brooklyn Metropolitan Detention Center ("MDC") caused by the coronavirus/COVID-19 pandemic ("COVID-19"), makes incarceration particularly hard for him. The Court is not persuaded for many of the reasons cited by the government in its opposition. It is true that we currently are experiencing a health crisis of global proportions due to COVID-19. On March 13, 2020, the President of the United

---

[1] The initial Pretrial Bail Report was amended to include the names of defendant's sister and niece and notes that the niece consents to be a suretor for defendant and to permit defendant to live with her and her two young sons. Pretrial Services now states that some modest bond, with conditions, may be appropriate; however, aside from noting the family's information, the Amended Bail Report remains unchanged from the Initial Bail Report prepared immediately after defendant's arrest, and does not acknowledge or take into consideration the fact that defendant has since pled guilty to two Class B felonies, which is a significant change in circumstances.

States issued a proclamation declaring a National Emergency in response to the COVID-19 pandemic pursuant to the National Emergencies Act (50 U.S.C. § 1601, *et seq.*). In addition, the Governor of New York has banned mass gatherings in the state, encouraged persons in the state to remain at home and to limit personal contact, and ordered the closure of non-essential businesses, among other steps taken to prevent the spread of COVID-19.  The government has noted in its opposition memorandum the steps that the Bureau of Prisons has taken to safeguard inmates and staff to prevent the spread of COVID-19.  These steps may not be perfect, but it bears noting that all persons, including those at liberty in the community, are struggling daily, under difficult and constantly evolving circumstances, to avoid contracting the disease and transmitting it to others.  There is no mention at all in defendant's moving papers that he has any of the underlying conditions that make him particularly susceptible to contracting the COVID-19 virus.  He seeks release simply because of COVID-19.  This is insufficient to meet the "exceptional reasons" required under 18 U.S.C. § 3145(c).

As noted above, defendant has an Immigration and Customs Enforcement ("ICE") detainer lodged against him, and, if released, he could be taken into ICE custody.  There is no guarantee that defendant will face less COVID-19 exposure at an immigration detention facility than he faces now at the MDC given the numerous reports in the press concerning the lack of humane treatment of immigrants in those facilities, including the lack of medical care, food, clothing, and beds, and the overcrowding of people in pens.

## CONCLUSION

For all the foregoing reasons, defendant's request for release on bond is denied.

SO ORDERED.

Dated: Brooklyn, NY
       April 23, 2020

_____/s/_____
DORA L. IRIZARRY
United States District Judge